## A91A1062. RUFFIN v. THE STATE.
### (412 SE2d 850)

SOGNIER, Chief Judge.

Ricky L. Ruffin was convicted of possession of cocaine in violation of OCGA § 16-13-30. He appeals from the trial court's denial of his amended motion for new trial.

1. Appellant contends the trial court erred by failing to suppress contraband found in his possession on the basis that it was found as the result of a stop which was not based on a reasonable, articulable suspicion. See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). OCGA § 17-5-30 (b) provides that a motion to suppress evidence "shall be in writing and state facts showing that the search and seizure were unlawful." It is undisputed that appellant did not file a motion to suppress either prior to or during the trial. "[F]ailure to interpose a timely motion to suppress pursuant to [OCGA § 17-5-30] constitutes a waiver of the constitutional guarantee with respect to the search and seizure in question. [Cits.]" *Hawes v. State*, 240 Ga. 327, 333 (7) (240 SE2d 833) (1977). Accordingly, this enumeration is without merit.

2. In his second enumeration of error, appellant maintains the trial court erred by denying his motion for new trial made on the ground of ineffective assistance of counsel. "Under the holding in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), there is a two-pronged test for determining the validity of a claim of ineffective assistance of counsel: whether (1) counsel's performance was deficient; and whether (2) this deficiency prejudiced the defense (there is a reasonable possibility that the outcome of the proceedings would have been different, but for counsel's deficiency). [Cit.]" *Thompson v. State*, 188 Ga. App. 508, 509 (373 SE2d 292) (1988).

(a) As evidence of ineffectiveness, appellant first points to coun-

sel's failure to file a motion to suppress. In *Wong Sun v. United States*, 371 U. S. 471, 487-488 (III) (83 SC 407, 9 LE2d 441) (1963), the U. S. Supreme Court held that the exclusionary rule bars the admission of evidence obtained as the result of an illegal search because it is "fruit of the poisonous tree." However, "evidence is [not] 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " Id. at 488. Thus, even if evidence would not have been discovered but for the illegal police conduct, if the derivative evidence has only an attenuated link to the illegality, it need not be suppressed. Id. at 487.

The evidence adduced at trial showed that at approximately 10:00 p.m. on December 26, 1988, Officer Dauphinee of the Savannah Police Department was on routine patrol of an area of downtown Savannah in which frequent car break-ins had occurred and in which was located a known crack house. While patrolling, Dauphinee noticed appellant walking on the east side of the neighborhood. Before leaving the area for approximately 30 minutes on official business, Dauphinee observed appellant again closer to the crack house. Upon returning, he saw appellant standing with another man in a parking lot behind a motel. Dauphinee testified that upon seeing the patrol car appellant and the other man parted company and appellant walked briskly away. Dauphinee crossed through traffic to stop appellant, placed him against the patrol car, and patted him down for weapons. Neither weapons nor drugs were found as a result of the patdown. However, after Dauphinee's routine computer check indicated an outstanding warrant for appellant's arrest for probation violation, appellant was arrested pursuant to the warrant and taken to jail. After appellant's arrival at the jail, Dauphinee searched the police car and found a ziplock plastic bag with several pieces of what was later determined to be rock cocaine behind the back seat. A search of appellant's person at the jail revealed another ziplock bag in his jacket pocket containing brownish white residue which later tested positive for cocaine.

We agree with appellant that under the holding of *Terry*, supra, the initial stop in the case sub judice was unlawful. See *Brown v. Texas*, 443 U. S. 47 (99 SC 2637, 61 LE2d 357) (1979). When urging ineffective assistance of counsel on the basis of counsel's failure to file a motion to suppress, appellant must "make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed. [Cits.]" *Rubiano v. State*, 147 Ga. App. 142, 144 (248 SE2d 207) (1978). Given that cocaine residue was dis-

covered on appellant's person during a search incident to his arrest pursuant to the outstanding warrant, see OCGA § 17-5-1 (b), we look first to the issue whether suppression of that cocaine residue would have been required. If suppression of that evidence would not have been required, we need not consider whether the cocaine recovered from the police car should have been suppressed had a proper motion been made on the ground that it was found only because appellant was present in the police car during an illegal stop. See *Brown v. State*, 191 Ga. App. 779 (383 SE2d 170) (1989).

We have found no Georgia case specifically addressing the issue whether a valid outstanding arrest warrant which is discovered in the course of a routine check during an unlawful *Terry* stop sufficiently attenuates the connection between the illegal stop and a subsequent search incident to an arrest pursuant to the warrant so as to render contraband found in that search admissible into evidence. Our review of applicable federal decisions, rather than revealing a single rule, demonstrates that the result in each case depends upon the application of the considerations behind the exclusionary rule to the facts at hand. Federal courts have found insufficient attenuation in situations where the arrestee's response to illegal police conduct reveals evidence of a prior crime, e.g., *United States v. Beck*, 602 F2d 726 (5th Cir. 1979), but have admitted evidence despite its strong causal connection to illegal police conduct where, after the unlawful arrest, the arrestee commits a new crime in the presence of the arresting officer and the evidence is obtained in a search incident to the "second" arrest. E.g., *United States v. Bailey*, 691 F2d 1009 (11th Cir. 1982). In *United States v. Nooks*, 446 F2d 1283 (5th Cir. 1971), a car was stopped by a sheriff without a sufficient articulable suspicion. However, the court held that the nexus between the original unlawful arrest and the subsequent search of the car's trunk — revealing evidence connecting the occupants to a recent bank robbery — had been attenuated by intervening events, including a police radio report indicating that the driver of the car matched the description of the robbers. Accordingly, "[b]efore the trunk of the automobile was opened it had become academic whether [the driver's] original arrest was lawful or not. . . . Under the circumstances known at the time of the actual search of the automobile, there can be no doubt as to the validity of that search. . . . The fruits of that search cannot realistically be treated as fruits of [the driver's] original arrest." Id. at 1288 (I).

Similarly, we hold that under the facts sub judice, the evidence discovered in appellant's pocket cannot realistically be treated as fruit of the original, illegal stop, and that Dauphinee's discovery of the valid outstanding warrant attenuated the connection between the illegal stop and the search that revealed the evidence within the meaning of *Wong Sun*, thereby rendering that evidence admissible.

To hold otherwise would effectively render the outstanding warrant invalid because of police conduct unrelated to its issuance, and would immunize appellant from arrest for past conduct already properly determined to constitute probable cause for his arrest. We decline to do so. Since the warrant was valid, appellant's arrest pursuant thereto was lawful, and he was lawfully searched incident to that arrest. It follows that the evidence uncovered in that search need not be suppressed, and that the test set forth in *Strickland*, supra, was therefore not met.

(b) " ' "The decisions on which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client." ' [Cits.]" *Fortson v. State*, 240 Ga. 5 (1) (239 SE2d 335) (1977). "[T]he appellate courts of this state are reluctant to reverse a case on the ground of ineffective assistance of counsel whenever the specific complaint urged can reasonably be construed as involving defense counsel's trial strategy. [Cits.]" *Rubiano*, supra. The remainder of the instances cited by appellant of his trial counsel's ineffectiveness either involved choices made by counsel as to trial strategy or, as in failure to subpoena a witness whose testimony was shown at the hearing on the motion for new trial to be immaterial, ultimately proved harmless. Accordingly, we conclude that the trial court did not err by finding that appellant was not denied his constitutional right to effective assistance of counsel. See generally *Richardson v. State*, 194 Ga. App. 358 (390 SE2d 442) (1990).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 29, 1991 —
RECONSIDERATION DENIED NOVEMBER 13, 1991.

*C. Jackson Burch*, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney*, for appellee.